IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOU & PAULA BRODER, *H/W* <br><br> v. <br><br> UNITED STATES OF AMERICA | CIVIL ACTION <br><br> NO. 22-37 |

MEMORANDUM OF DECISION

**Baylson, J.**                                                                                         December 15, 2022

   A non-jury trial was held before the Court on December 12 and 13, 2022 between Plaintiffs Lou and Paula Broder and Defendant United States of America.  The case stems from Mr. Broder's having sustained injuries after tripping on a rolled-over floor mat at his local U.S. post office.  Over the course of the two-day trial, the parties elicited testimony from a total of five witnesses: Mr. Broder, two employees of the post office, and two expert witnesses, one from each side.  The parties submitted evidence in the form of, among other things, medical records and expert reports.  Security footage depicting Mr. Broder's fall was played for the Court.  The parties put on their respective cases quickly and efficiently while also addressing the Court's questions throughout the trial, which required only minimal argument from counsel.

   The Court has jurisdiction over this action pursuant to the Federal Tort Claims Act.  See 28 U.S.C. § 1346(b).

   Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following:

   **I.    Findings of Fact**

   **a.  The Post Office Incident and the Testimony of Mr. Broder**

   Plaintiff Mr. Broder went to the Southampton Post Office ("Post Office") several times a week for over twenty years, primarily to retrieve his mail. On Christmas Eve 2018, Mr. Broder

went to the Southampton Post Office to retrieve his mail at approximately 11 a.m. Around this time, an unidentified Post Office customer requested a mail hamper (also referred to as a "mail cart") from Vasant Patel, a Southampton Post Office employee. Mr. Patel provided the customer a mail hamper; Mr. Patel, a Southampton Post Office employee of 22 years, testified during the trial that it was not uncommon for customers to use the mail hampers to transport larger packages from one end of the Post Office to the other.

The customer then began to wheel the empty mail hamper toward the other end of the Post Office, near the alcove where Mr. Broder was retrieving mail from his personal P.O. Box. Security footage played at trial clearly showed that as the mail hamper rolled over a floor mat, a portion of the mat moved and "flapped over." About two to three seconds later, Mr. Broder came into view of the video footage and tripped on the rolled-over portion of the floor mat, falling hard to his right and landing on the floor out of view. Mr. Broder testified that before he fell, he was looking ahead towards the Post Office's front counter and did not see the rolled-up floor mat.

Mr. Broder fell on his right side and braced his fall with his right arm and knee. Post Office supervisor Ciju Chacko went to see Mr. Broder seconds after he tripped and offered to obtain medical assistance. Mr. Broder turned down Mr. Chacko's offer to obtain medical assistance and went directly home. Mr. Broder testified that at home, he realized that he couldn't lift his arm over his head without a lot of pain.

Mr. Broder later went to see Dr. Rubinstein at the Rothman Institute on December 26, 2018. Mr. Broder obtained an MRI which showed a slight strain in his right shoulder rotator cuff. Plaintiff's counsel also furnished for the Court pictures of Mr. Broder's knee taken soon after the incident, showing a gash and swelling. Mr. Broder testified that he attended physical

therapy for his shoulder for a long period of time and that his injuries have now healed enough to allow him to play pickleball.

The Court finds that Mr. Broder was a credible witness on all of the facts he presented. However, Mr. Broder's testimony did not present any facts allowing a conclusion that the Defendant violated a duty that it owed to Mr. Broder. Mr. Broder testified that he did not notice the floor mat when he walked into the Post Office, let alone whether it was wrinkled or puckered prior to the mail hamper rolling it up. In the many years that he had frequented the Post Office, he never once saw a rolled-up floor mat.

### b. Testimony of the Post Office Employees

The Court heard the testimony of Vasant Patel and his supervisor, Ciju Chacko, both employees of the Post Office who were working there on the day Mr. Broder tripped. Mr. Chacko, who had been at the Post Office for four years, testified to the policies the Post Office had in place to protect customers. He testified that employees were instructed to routinely inspect the premises for issues, and that any issues with the floor mats would be addressed immediately when discovered. To Mr. Chacko's credit on this point, the security footage showed that while Mr. Chacko tended to Mr. Broder following the trip, one of the other employees immediately went to the upturned floor mat and fixed it flat. Mr. Chacko also testified that floor mats were routinely replaced on a schedule, and that employees would periodically inspect the floor mats for wear and tear in case a replacement was needed more swiftly. In the four years that Mr. Chacko was employed at the Post Office, he never once saw a rolled-up floor mat while working.

Neither Mr. Patel nor Mr. Chacko testified to having seen a wrinkle or pucker in the floor-mat prior to the mail hamper rolling over it.

### c. Testimony of the Expert Witnesses

Both Plaintiff and Defendant called expert witnesses, forensic civil engineers, each with many years of experience in the field and knowledge of the industry standards governing the use of carpets and rugs on business premises. The Court disagrees with the testimony of the Plaintiffs' expert that the floor mat on which Mr. Broder tripped was wrinkled, puckered or in any way other than lying flat on the floor before the hamper went onto the floor mat.

Both experts testified to visiting the Southampton Post Office sometime in 2022 and testifying about what they found at that time. The Court rejects the conclusions of both experts as to their respective 2022 inspections having any probative impact on the issues in this case. Both experts conceded that they did not take steps to verify whether the floor mats they inspected on their site visits were the same as the floor mat which Mr. Broder tripped on, merely basing their conclusions on the apparent resemblance from the security footage and the unfounded assumption that the Post Office would continue using the same or technically similar floor mats four years after the incident.

## II.     Conclusions of Law

U.S. post offices owe business invitees a duty of reasonable care "to keep the premises in a reasonably safe condition or to warn of hidden dangers thereon." Greenbaum v. United States, 366 F.Supp. 26, 30 (E.D.Pa. 1973) (Huyett, J.) (citing Stimmel v. Kerr, 148 A.2d 232 (Pa. 1959)). As a business invitee, Mr. Broder had the burden of proving that the Post Office breached its duty of reasonable care it owed to him as a business invitee. See Rubino v. United States, No. 97-3981, 1998 WL 461855 (E.D.Pa. Aug. 4, 1998) (Dalzell, J.). Plaintiffs concede that the rolled-over rug could not be constructively discoverable by Defendant in the few seconds before Mr. Broder tripped and rests his case entirely on whether prior defects to the floor mat

4

existed.  See Neve v. Insalaco's, 771 A.2d 786, 789 (Pa. Super. Ct. 2001) (holding that "shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs").

The Court finds that Plaintiffs have failed to prove, by the applicable standard of proof, that the Defendant breached a duty to the Plaintiffs under settled business invitee legal principles under Pennsylvania Law.  The Post Office was not negligent in maintaining the lobby of the Southampton Post Office.  The Post Office showed reasonable care in maintaining the lobby at all times relevant to this case.  The Post office had no notice that the incident floor mat presented a tripping hazard after it had been moved as the mail hamper passed over the mat.  It was clear from the testimony of the Post Office employees that rolled-up floor mats were not a frequent occurrence, let alone the fact that neither had ever seen one before during their many collective years as employees there.  The incident floor mat met all relevant safety standards for floor mats, a point conceded by Plaintiffs' expert on cross-examination.  Plaintiffs did not satisfy their burden of proving by a preponderance of the evidence that the floor mat presented a constructively discoverable defect rising to negligence on behalf of the business owner.  See Reardon v. Meehan, 227 A.2d 667, 669 (Pa. 1967) ("[P]ermitting a rug to remain unfastened to the floor Per se may not constitute negligence"); Moultrey v. Great A&P Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980) ("[T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither . . . evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence").

For the above reasons, Judgment will be entered in favor of the Defendant and against the Plaintiff.  An appropriate order follows.

O:\CIVIL 22\22-37 Broder et al v. USA\22cv37 Memorandum of Decision.docx